UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MARTS, an individual,<br>Plaintiff,<br>v.<br>ESURANCE INSURANCE COMPANY, a foreign insurance company,<br>Defendant. | C25-1572 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiff John Marts's Motion for Partial Summary Judgment, docket no. 22. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

On April 29, 2024, Plaintiff got into a car collision with two other individuals, Eliot Smith and Deborah Hackworth. See Eichinger Report at 2, Ex. 9 to Russell Decl. (docket no. 27-3); Marts Dep. at 21:1–16, Ex. 1 to Lin Decl. (docket no. 23 at 7). Smith changed lanes without looking and struck Plaintiff's vehicle. Id. Plaintiff's vehicle spun 180 degrees and struck Hackworth's vehicle. See Eichinger Report at 2 (docket no. 27-3); Marts Dep. at 21:1–16 (docket no. 23 at 7). Plaintiff had a policy of auto insurance

through Defendant Esurance that was valid at the time of the collision. See Zeisler Dep. at 6:4–11, Ex. 4 to Lin Decl. (docket no. 23). Plaintiff's policy provided up to $50,000 per person or $100,000 per occurrence of Underinsured Motorist ("UIM") coverage. Id. at 6:12–15.

On April 30, 2024, Plaintiff went to urgent care and received x-rays of the cervical and thoracic spine, diagnoses of neck pain/tenderness and whiplash injury to the neck, and a prescription for pain medication. See Ex. 5 to Lin Decl. (docket no. 23 at 35–36).

Plaintiff subsequently saw a physician on three occasions. On July 9, 2024, Plaintiff saw James Liadis, MD, who conducted a physical exam, found that Plaintiff's bilateral shoulder range of motion was significantly limited, and discussed several treatment options including pain medication and physical therapy. Ex. 12, 2d Lin Decl. (docket no. 29 at 35–37). On July 19, 2024, Plaintiff saw Ashley Lee, DO, for complaints of bilateral shoulder pain; Dr. Lee conducted a physical assessment and reviewed the results of Plaintiff's x-rays before, among other things, ordering an MRI. Ex. 12, 2d Lin Decl. (docket no. 29 at 26–29). On August 7, 2024, at the follow-up visit post-MRI, Dr. Lee examined Plaintiff's right and left shoulders, found that both had mild tendinosis and moderate osteoarthritis, and recommended a treatment plan that included medication, topical heat, and physical therapy. Ex. 12, 2d Lin Decl. (docket no. 29 at 18–20). No provider during this period assessed Plaintiff with any cognitive or neurological issues.

An arbitrator found Smith 100 percent liable for Plaintiff's property damage resulting from the car collision. See Letter, Ex. 5 to Lin Decl. (docket no. 23 at 35). On

December 11, 2024, Plaintiff made a demand to Esurance for his $50,000 UIM policy limits. Ex. 3 to Russell Decl. (docket no. 27-3). In the demand letter, Plaintiff's counsel explained that Plaintiff would be "evaluated by a physical medicine doctor to determine whether he should undergo additional injections or receive a referral to orthopedic surgery." Id. On February 25, 2025, Esurance responded and concluded that Smith's liability limits[1] were sufficient to compensate Marts for damages, which it estimated to be $22,672.12, and Esurance owed no UIM benefits to Plaintiff. See Letter, Ex. 5 to Lin Decl. (docket no. 23 at 35–36).

On February 12, 2025, Virtaj Singh, MD, authored a report following a visit from Plaintiff on the same date. Singh Report, Ex. 2 to Lin Decl. (docket no. 23). Dr. Singh reviewed the notes of Plaintiff's healthcare providers from April 30, 2024, July 9, 2024, July 19, 2024, and October 7, 2024.[2] Id. at 1–2. At Dr. Singh's request and as part of a neurologic examination, Plaintiff completed a "SCAT-6 symptom questionnaire," where he endorsed symptoms in 11 of 22 categories, including "feeling slowed down, difficult remembering, fatigue or low energy, [and] feeling more emotional." Id. at 3–4. Dr. Singh assessed the following: concussion/mild traumatic brain injury ("mTBI") with persistent post-concussive symptoms, chronic cervical spine injury, and chronic bilateral shoulder injuries. Id. at 4. Dr. Singh believes Plaintiff's injuries "make it difficult for him to work beyond the light category" and "he will need a job that allows for frequent

---

[1] Smith's liability policy limit is $50,000. Letter, Ex. 7 to Lin Decl. (docket no. 23 at 52).

[2] The "10/07/24" date on the notes that Dr. Singh reviewed was a typo; he actually reviewed the August 7, 2024, visit notes. This aspect of Dr. Singh's report and the parties' arguments concerning it are addressed in more detail below.

positional changes and cognitive breaks."[3] Id. at 5. Dr. Singh estimates Plaintiff has "well over" $100,000 of future care needs. Id.

After receiving the denial letter, Plaintiff provided Esurance with Dr. Singh's report on February 25, 2025. On March 4, 2025, Esurance informed Plaintiff that its position remained unchanged, revised its damages estimate up to $34,833.87, and concluded once again that it owed Plaintiff no UIM benefits. Letter, Ex. 7 to Lin Decl. (docket no. 23 at 52–54). Esurance noted that Plaintiff's medical records for "October 7, 2024," the final date of service, had not been provided and opined that the missing record is substantive to the evaluation of Plaintiff's claim. Id. at 53.

Plaintiff filed a lawsuit in King County Superior Court against Smith, asserting a negligence claim. Compl. at ¶¶ 4.1–4.2, Ex. 3 to Lin Decl. (docket no. 23). On May 12, 2025, Plaintiff filed an Amended Complaint against Smith and also added Esurance as a defendant. Am. Compl. (docket no. 1-3).[4] Thereafter, Plaintiff resolved his claim against Smith for $400,000. In August 2025, after Plaintiff's claims against Smith were voluntarily dismissed, the case was removed to this District. Notice of Removal (docket no. 1). Plaintiff asserts the following claims against Esurance: (1) breach of the Washington Insurance Fair Conduct Act ("IFCA"), RCW Chapter 48.30, and related Washington Administrative Code regulations; (2) breach of good faith duty; (3) breach of fiduciary duty; (4) breach of the Washington Consumer Protection Act ("CPA"),

---

[3] Plaintiff has worked as a ship superintendent at Lake Union Drydock for almost twenty years and is in charge of overseeing the shipyard and inspecting vessels. Ex. 3 to Russell Decl. (docket no. 27-3).

[4] The record does not reflect any communications between Plaintiff and Esurance after March 4, 2025, and before Plaintiff sued Esurance.

RCW Chapter 19.86; (5) negligence; and (6) breach of contract. Am. Compl. at ¶¶ 5.1–5.6 (docket no. 1-3).

Plaintiff filed a Motion for Partial Summary Judgment, docket no. 22, seeking the following rulings: (1) Esurance violated WAC 284-30-330(4) by refusing to pay Plaintiff's claim without conducting a reasonable investigation; (2) Esurance breached its duty of good faith; and (3) only a $50,000 offset should apply. Mot. at 2 (docket no. 22).

**Discussion**

**A. Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. See Beard v. Banks, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting Celotex, 477 U.S. at 322)).

**B. WAC 284-30-330(4) and Duty of Good Faith**

Plaintiff claims that Esurance breached its duty to reasonably investigate his UIM claim when it ignored evidence supporting his claim or denied coverage for injuries without a medical basis. Mot. at 13 (docket no. 22). Plaintiff has not, however,

established the requisite absence of genuine disputes of material fact to obtain summary judgment as to Esurance's alleged breaches of its duties to investigate and of good faith.

To prove a claim under IFCA, Plaintiff "must show that the insurer unreasonably denied a claim for coverage or that the insurer unreasonably denied payment of benefits." Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 683, 389 P.3d 476 (2017). Refusing to pay a claim without conducting a reasonable investigation is an unfair or deceptive act or practice of an insurer. WAC 284-30-330(4). A violation of WAC 284-30-330, which constitutes a per se unfair trade practice, may result in CPA liability if the remaining elements of the five-part test for a CPA action under RCW 19.86.090 are established. Indus. Indem. Co. of the Nw. v. Kallevig, 114 Wn.2d 907, 923, 792 P.2d 520 (1990). "A denial of coverage does not constitute an unfair or deceptive act or practice as long as it is based on reasonable conduct of the insurer." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 434, 38 P.3d 322 (2002).

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). The duty to act in good faith includes the duty to reasonably investigate a claim. Aecon Bldgs., Inc. v. Zurich N. Am., 572 F. Supp. 2d 1227, 1235 (W.D. Wash. 2008). An insurer has an affirmative duty to investigate a claim before it denies coverage; the insured need not continue supplementing the record to an uninquisitive insurer. Id. at 1236. "[A] reasonable basis for denying coverage constitutes a complete defense to any claim that the insurer denied coverage in bad faith or in violation of the CPA." Rizzuti v. Basin Travel Serv. of Othello, Inc., 125 Wn. App. 602,

622, 105 P.3d 1012 (2005). Generally, bad faith is a question of fact for the jury. Spurlock v. State Farm Fire & Cas. Co., 2024 WL 5008872 (W.D. Wash. Dec. 6, 2024).

Although Plaintiff offers evidence that Esurance made its coverage decisions without consulting a qualified medical expert, Esurance offers evidence that it asked Plaintiff to provide additional information to evaluate his claim and that, as Plaintiff provided additional records, Esurance increased its estimation of Plaintiff's damages. Plaintiff focuses on the testimony of Esurance's claims adjuster Danelle Lendsey, who stated that she is not a healthcare provider, not able to diagnose medical conditions, and has no formal training in neurology, orthopedics, or pain management. Lendsey Dep. at 7:11–22, Ex. 6 to Lin Decl. (docket no. 23 at 40). Lendsey admitted that, in increasing Esurance's offer on March 4, 2025, to $34,833.87, she simply did not agree with Dr. Singh's assessment that Plaintiff suffered mTBI "based on totality of all documents received since the date of the incident." Id. at 16:24–17:06 (docket no. 23 at 43–44). Lendsey pointed to the fact that Dr. Singh's assessment provided to Esurance on February 25, 2025, was the first indication of this diagnosis and showed up in Plaintiff's medical records ten months after the collision and five months after his last medical evaluation or follow-up. Id. at 17:11–23 (docket no. 23 at 44). Lendsey considered it "possible" to have ordered an independent medical evaluation ("IME") but decided it was not appropriate without having "all of the available medical records."[5] Id. at 20:3–11

---

[5] The "missing" medical record was what Dr. Singh identified as notes from an "10/7/24" as the date of service. Esurance argues that evidence of its consistent requests for records and increased estimated loss amounts in response to the receipt of additional documentation is sufficient to present an issue of fact. See Resp. at 9 (docket no. 26). Plaintiff responds that Dr. Singh made a typo and meant to refer to the "8/7/24" medical record, which Esurance already had, and therefore the failure to conduct a records

(docket no. 23 at 45). She did not consult with any healthcare providers related to Plaintiff's claimed loss and did not rely on any medical literature not offered by providers. Id. at 20:12–20 (docket no. 23 at 45).

Esurance explains, however, that Lendsey identified a missing medical record and asked Plaintiff to supplement that information. Lendsey noted that Esurance's "current position is based on the information available to date. Should you have additional information to submit for our consideration, we will be happy to review the same." Letter, Ex. 7 to Lin Decl. (docket no. 23 at 53). Plaintiff does not explain why he did not inform Lendsey that Dr. Singh's report contained a typo and that he never saw a healthcare provider on October 7, 2024. Instead, Plaintiff insists, Esurance "should have realized" that Dr. Singh's report had a typo based on inferences drawn from the rest of Dr. Singh's report and Plaintiff's medical records. Reply at 4 (docket no. 28). Plaintiff also offers several reasons why the absence of a potential or suspected single follow-up record would not prevent an IME or records review from being ordered and performed, but cites no authority in support. Id.

---

review or IME at that time was unreasonable. Reply at 3–4 (docket no. 28). Esurance filed a surreply pursuant to Local Civil Rule 7(g), moving to strike Plaintiff's explanation and supplemental evidence filed in support because (1) "[a]t no point did either party argue or assert that the medical record" of one specific date was missing; and (2) Plaintiff argued for the first time in reply that the absence of a potential or suspected single follow-up record would not prevent an IME or records review from being performed. See Surreply at 2–3 (docket no. 31). Lendsey's March 4, 2025, letter denying Plaintiff's UIM claim identified one medical record as missing and needed to further evaluate Plaintiff's claim. Letter, Ex. 7 to Lin Decl. (docket no. 23). The Court concludes that Plaintiff's arguments on this issue are responsive to Esurance's response brief and therefore not subject to being stricken as new issues or new evidence in a reply brief. See ML Liquidating Tr. v. Mayer Hoffman McCann P.C., 2011 WL 10451619, at *1 (D. Ariz. Mar. 11, 2011).

The Court must view the evidence in the light most favorable to the non-moving party, i.e., Esurance, and therefore cannot grant summary judgment to Plaintiff. In Vorhees v. Esurance Insurance Services, Inc., 2024 WL 3069977 (W.D. Wash. June 20, 2024), affirmed, 2025 WL 1682180 (9th Cir. June 16, 2025), the court denied the plaintiffs' motion for partial summary judgment as to one plaintiff's IFCA claim because Esurance "consistently requested supporting records and increased their settlement amounts in response to the plaintiffs' impact statement." Id. at *4. Esurance's actions in this case parallel its actions in Vorhees, and Plaintiff failed to inform Esurance about Dr. Singh's typo or that no medical record existed from October 7, 2024.[6] Plaintiff has not established, as a matter of law, that Esurance was an "uninquisitive insurer" and did not possess a reasonable basis to deny coverage.

## C. The Offset

Plaintiff claims that Esurance is entitled to a $50,000 offset, relying on Washington's UIM statute and two Washington cases. Mot. at 15–16 (docket no. 22). Esurance argues that any ruling as to the amount of an offset is premature and, in any event, disputes the appropriate offset amount.[7] Resp. at 12–15 (docket no. 26).

---

[6] Gerald Hartman, Plaintiff's insurance claims handling expert, fails to account for Esurance's gap of knowledge before opining that "[i]t was as if the claims handlers, who have no medical training, elected to reject [Dr. Singh's] diagnosis and future treatment. This is not consistent with industry practice and protocol." Expert Report, Ex. 2 to Hartman Decl. (docket no. 24 at 20). The Court need not otherwise reach the admissibility of Hartman's opinions at this time. See Resp. at 15–16 (docket no. 26).

[7] In his reply brief, Plaintiff urges the Court to decide this issue now and relies on the following basis: "The amount of the applicable offset is a question of contract interpretation." Reply at 5 (docket no. 28). In its Surreply, docket no. 31, Esurance contends that this is a new argument not previously raised and thus must be stricken. The Court disagrees. Plaintiff explicitly relied on the language of his insurance policy in his opening brief to explain that the UIM statute language and its interpretation by Washington courts is consistent with Esurance's own policy. See Mot. at 16 (docket no. 22).

The parties have not adequately briefed the issue, and the Court therefore declines to address it at this time. See Allstate Ins. Co. v. Dejbod, 63 Wn. App. 278, 293, 818 P.2d 608 (1991) ("The question calls into issue whether a payment made in settlement, to the extent it exceeds the damages for which a liability insured is later found legally responsible, should be characterized as partial compensation for a claimant's injuries or as a payment from a collateral source. We decline to decide the question at this time. Neither party has identified, briefed or argued it . . . ."); see also Delashaw v. Seattle Times Co., 2018 WL 4027078, at *14 (W.D. Wash. Aug. 23, 2018) (declining to address a party's cursory argument because the party failed to provide enough detail to allow the court to fully evaluate it).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's Motion for Partial Summary Judgment, docket no. 22, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of September, 2026.

Thomas S. Zilly
United States District Judge